UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

LNV CORP.                              CIVIL ACTION NO. 6:19-0605

VERSUS                                 JUDGE DOUGHTY

PAWAN HOSPITALITY, LLC,                MAGISTRATE JUDGE WHITEHURST
    ET AL.

## REPORT AND RECOMMENDATION

Before the Court upon referral from the district judge is the Motion to Dismiss [Doc. 33] filed by plaintiff, LNV Corporation ("LNV"), in which LNV requests dismissal of the counterclaims of the defendants, Pawan Hospitality LLC, Jignesh Patel, Ankur Patel, Pinu Patel, Pravin Patel, Vipul Patel, and Patel Construction, LLC ("defendants"), on grounds the counterclaims are barred by the *Rooker-Feldman* doctrine, res judicata, or otherwise and independently fail to state a claim. Defendants oppose the motion [Doc. 39], and LNV filed a reply brief [Doc. 42]. IT IS RECOMMENDED that the motion be GRANTED IN PART AND DENIED IN PART.

## FACTUAL AND PROCEDURAL BACKGROUND

The instant lawsuit arises out of a foreclosure proceeding against Pawan Hospitality ("Pawan") in the Fifteenth Judicial District for the Parish of Lafayette, State of Louisiana, entitled *LNV Corporation v. Pawan Hospitality LLC*, and

bearing Docket Number 2018-2938 (the "Foreclosure Action").   Defendant Pawan was the mortgagor and the remaining defendants were guarantors of obligations due under a Note and Mortgage of certain immovable property located at 125 East Kaliste Saloom Road, Lafayette, Louisiana, 70508 (the "Property") that culminated with the sale of immovable property on March 27, 2019 to LNV pursuant to a credit bid of $1,750,00.00.   Because there were no bids at the first advertised Sheriff's sale, the date of the sale was the second sale date advertised. LNV alleges that the total amount due to LNV under the Loan Documents as of the Judicial Sale date was $5,761,399.90, which included the following amounts: principal of $4,346,853.17, accrued interest including default interest of $1,085,385.09, expenses paid by LNV of $186,705.33, which included advances to the Court Appointed Keeper for the Property in the Foreclosure Action, Delinquent Property Tax payments of $71,384.40, Attorneys' Fee and Costs of $69,821.91, and Late Fees of $1,250.00.

A copy of the Deed and *Proces Verbal* was recorded on April 12, 2019, with the Clerk and Recorder of Lafayette Parish, Louisiana in the Conveyance Records under File Number 2019-00011502. As reflected in the *Proces Verbal*, the Property was appraised for $3,500,000.00. Pursuant to Louisiana Code of Civil Procedure Article 2336, the debt owed to the seizing creditor was reduced by

2

one-half of the appraised value; therefore, the total amount due to LNV was reduced by $1,750,000.00, on the date of the sale. The record reflects that none of the defendants raised any defense, objection and/or appeal in the Foreclosure Action.

On May 10, 2019, LNV filed the instant action in this Court (the "Deficiency Action") to collect the deficiency balance owed after the sale.  LNV alleges that as of April 30, 2019, the total amount due to LNV was $4,165,273.31 (the "Deficiency"), consisting of the principal balance of $4,011,399.90 (inclusive of the credit of $1,750,000.00 in accordance with Louisiana Code of Civil Procedure Article 2336); unpaid interest in the amount of $81,899.41; and sheriff's costs and other charges in the amount in the amount of $71,974.00.

LNV argues that under the terms of the respective Guaranty Agreements signed by each Guarantor, the Guarantors "absolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of the Indebtedness." Therefore, the Unlimited Guarantors, as defined in the Deficiency Action, are liable *in solido* to LNV, and the Limited Guarantor is liable for $1,000,000.00 plus costs, expenses, and interest on $1,000,000.00.

On October 3, 2019, the defendants filed a counterclaim against LNV seeking to recover damages, attorney's fees and costs for alleged wrongful seizure,

conversion, taking without due process, unfair trade practices, and abuse of rights. On October 18, 2019, the defendants voluntarily dismissed their claim for unfair trade practices, [Doc. 28], leaving the claims for wrongful seizure, conversion, taking without due process, and abuse of rights at issue. In these counterclaims, defendants argue for relief in connection with two sets of problems related to the foreclosure action: (1) LNV's alleged wrongful seizure and disposition of furniture, equipment and other movables ("Corporeal Movables," as defined in the defendants' Answer) as LNV pursued an executory proceeding on the hotel "Real Estate" in which the Corporeal Movables were located without the consent of or abandonment by any of the defendants; and (2) a series of substantive defects with the appraisal process (including defects in appraiser qualifications, inspections, and identity of properties appraised, all as detailed in the Answer).[1]

---

[1] As explained by LNV in its motion to dismiss, these alleged flaws in the foreclosure action include: 1) LNV failed to attach the security agreement to its Petition in the Foreclosure Action in furniture, fixtures and equipment ("Corporeal Movables"); 2) LNV caused the Corporeal Movables to be seized with the Immovable Property operating as a hotel; 3) LNV included the Corporeal Movables in the Petition, but not in the writ of seizure, notices of seizure, public advertisements, notice to appoint appraiser and/or the sheriff's deed; 4) LNV's appraiser appraised the Immovables and Corporeal Movables when the sheriff's appraiser did not appraise the Corporeal Movables; 5) the sheriff's appraiser's was not qualified to appraise the Property; 6) LNV's appraiser did not inspect the interior of the property, in the updated appraisal dated March 27, 2019; 7) LNV took control of the Corporeal Movables; and 8) LNV sold the Corporeal Movables.

LNV filed the instant motion to dismiss, seeking dismissal of all of the defendants' counterclaims on grounds this Court lacks jurisdiction to review defendants' counterclaims, as they constitute a collateral attack on the state court foreclosure action specifically prohibited by the *Rooker-Feldman* doctrine. LNV argues defendants' counterclaims are also a collateral attack on the foreclosure action and are therefore barred by *res judicata*. Finally, LNV argues all of the counterclaims independently fail because they fail to state a claim. The Court will address each argument in turn.

## **LAW AND ANALYSIS**

### **1. Motion to Dismiss Standard**

To survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232–33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). But the Court is not bound to

5

accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiffs' claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. If there are insufficient factual allegations to raise a right to relief above the speculative level, *Twombly*, 550 U.S. at 555, or if it is apparent from the face of the complaint that there is an insuperable bar to relief, *Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007), the claim must be dismissed.

Because LNV seeks dismissal of the defendants' counterclaims on the basis of the *Rooker-Feldman* doctrine, this Court's subject matter jurisdiction is challenged. Federal Rule of Civil Procedure 12(b)(1) requires dismissal of an action if the court lacks jurisdiction over the subject matter of the claim. *Hughes v. Johnson*, 2016 WL 6124211, at *3 (E.D. La. Oct. 20, 2016) (Vance, J.). In the context of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction,

the party asserting jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts. *Id.* When examining a factual challenge to subject matter jurisdiction that does not implicate the merits of the cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Hughes*, 2016 WL 6124211, at *3, *citing Arena v. Graybar Elec. Co.*, 669 F.3d 214, 223 (5th Cir. 2012). Accordingly, the court may consider matters outside the pleadings. *Id.*, *citing Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015).

## 2. Analysis

### *Rooker-Feldman* Doctrine

LNV argues that this Court should abstain from hearing the defendants' counterclaims under the *Rooker-Feldman* doctrine, which limits the Court's subject matter jurisdiction. The *Rooker-Feldman* doctrine "holds that inferior federal courts do not have the power to modify or reverse state court judgments."

7

In *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004), the

Fifth Circuit noted:

> The Supreme Court has definitively established, in what has become
> known as the *Rooker–Feldman* doctrine, that "federal district courts,
> as courts of original jurisdiction, lack appellate jurisdiction to review,
> modify, or nullify final orders of state courts." "If a state trial court
> errs the judgment is not void, it is to be reviewed and corrected by the
> appropriate state appellate court. Thereafter, recourse at the federal
> level is limited solely to an application for a writ of certiorari to the
> United States Supreme Court."

The Supreme Court has cautioned that in light of the "narrow ground"

*Rooker–Feldman* occupies, it does not prohibit a plaintiff from "present[ing] some

independent claim, albeit one that denies a legal conclusion that a state court has

reached in a case to which he was a party." *Exxon Mobil Corp. v. Saudi Basic

Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22, 161 L. Ed. 2d 454

(2005). In these circumstances, state-law preclusion principles control. *Id.* at

293, 125 S.Ct. 1517; *see also Lance v. Dennis,* 546 U.S. 459, 466, 126 S.Ct. 1198,

163 L.Ed.2d 1059 (2006) ("*Rooker–Feldman* is not simply preclusion by another

name."). Thus, the law is clear that the *Rooker–Feldman* doctrine is confined to

cases of the kind from which the doctrine acquired its name, that is, "cases brought

by state-court losers complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced and inviting district

court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22, 161 L. Ed. 2d 454 (2005). *Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions. *Exxon Mobil*, 544 U.S. at 284, 125 S. Ct. at 1521–22.

LNV argues that the defendants' counterclaims are no more than an attempt to circumvent the state foreclosure proceeding, and that this Court cannot review the foreclosure action in this manner. LNV points to the fact that defendants did not challenge any aspects of the foreclosure proceeding at the time it occurred and cannot litigate the result of the foreclosure proceeding in this Court. In this sense, LNV couches the defendants' counterclaims as "wrongful foreclosure claims" over which this Court has no jurisdiction. The defendants argue that they are not requesting nullification of the judicial sale and are not challenging procedural defects including lack of authentic evidence with a *de facto* attack on the order of seizure and sale in the executory proceeding. Rather, the defendants argue that they seek damages and other relief based on *wrongful substantive and independent actions of LNV.*

9

Two decisions within this circuit illustrate the limited and narrow application of the *Rooker-Feldman* doctrine in the context of foreclosure proceedings. In *Truong v. Bank of America, N.A.*, 717 F.3d 377 (5th Cir. 2013), a mortgagor whose loan was securitized brought an action against certain banks, alleging violations of the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA) in connection with the foreclosure of her property by executory process. The district court dismissed the action in part on *Rooker-Feldman* grounds, and the mortgagor appealed. On appeal, the Fifth Circuit held that *Rooker-Feldman* did not deprive the district court of jurisdiction over the plaintiff's claims, because "Truong did not seek to overturn the state-court judgment [in the executory proceeding], and the damages she requested were for injuries caused by the banks' actions, not injuries arising from the foreclosure judgment." *Truong*, 717 F.3d at 383

Similarly, in *Brooks v. Flagstar Bank*, 2011 WL 2710026 at 4-5 (E.D.La. 7/12/2011), plaintiffs who had lost their home at a sheriff sale in an executory proceeding filed suit in federal court asserting causes of action for damages under the Fair Debt Collection Practices Act, fraud, negligence and other theories. The Court acknowledged that "the *Rooker-Feldman* doctrine does not preclude a district court's jurisdiction over a plaintiff's 'independent claim' . . . ." and refused

10

to dismiss the subject claims under *Rooker-Feldman* because the claims did not "challenge the state court's foreclosure order."  *Id*. at 3, 4-5.

In the instant case, the defendants do not seek to collaterally attack the foreclosure proceeding itself; rather, they seek damages for certain actions taken by LNV in the proceeding that caused them injury, most notably, the alienation of the movables that were inside the property that was foreclosed, and other fundamental defects inherent in the proceeding.  As the defendants argue, these claims are compulsory claims in the deficiency action, and do not attack the result of the foreclosure proceeding per se.  Specifically, the counterclaims do not seek nullification of the subject judicial sale or collaterally attack the state court order of seizure and sale.   Therefore, the defendants do not seek to set aside the foreclosure itself, but rather, seek redress for certain actions of LNV that they allege caused injury. For these reasons, the undersigned finds that the defendants' counterclaims are not barred by the *Rooker-Feldman* doctrine.   Because there is no other challenge to this Court's subject matter jurisdiction, the Court concludes the counterclaims are not subject to dismissal on this ground.

### Res judicata

LNV seeks dismissal of the defendant's counterclaims on grounds of res judicata, arguing the defendants' failure to assert their claims or defenses to the

foreclosure action by way of a timely injunction or appeal at the time of the foreclosure precludes the instant challenge to the procedures and formalities of the foreclosure proceeding at this juncture.   LNV argues that once the sale is completed, the underlying judgment for seizure and sale becomes res judicata. The defendants respond that LNV's argument is premised on an erroneous assumption, i.e., that defendants are seeking an annulment of the judicial sale. Defendants clarify and repeat that they are not, in fact, seeking such an annulment, and res judicata does not bar their claims herein.

La. Rev. Stat. 13:4112 makes clear that a debtor is entitled to assert defenses in a deficiency action after the sale of foreclosed property, to wit:

> No action may be instituted to set aside or annul the judicial sale of immovable property by executory process by reason of any objection to form or procedure in the executory proceedings, or by reason of the lack of authentic evidence to support the order and seizure, where the sheriff executing the foreclosure has either filed the proces verbal of the sale or filed the sale for recordation in the conveyance records of the parish. Any party seeking to annul or set aside a judicial sale of immovable property through executory proceedings filed for record before the adoption of this Section must do so within six months of September 12, 1975. ***Nothing herein shall be construed to affect <u>legal defenses</u> otherwise available to any person against whom a deficiency judgment is sought after the public sale of immovable property through executory proceedings.***

La. Rev. Stat. §13:4112 (emphasis added).

12

The parties disagree about the nature of the defendants' "legal defenses," and whether those defenses are asserted as affirmative defenses or counterclaims. LNV appears to suggest that, to the extent defendants' ''legal defenses" are asserted as counterclaims, they are subject to dismissal, while any affirmative defenses – although they are without merit – can proceed.  In any event, LNV argues the defendants' affirmative defenses are not the subject of the instant motion.  The undersigned finds that the parsing of terminology in this instance is immaterial.  Whether asserted as affirmative defenses or counterclaims, the defendants challenge certain actions taken by LNV in connection with the foreclosure proceeding.  Defendants do not seek to annul the judicial sale, therefore, their defenses/claims focus on independent actions of LNV during the foreclosure process.  For this reason, the undersigned concludes that the defendants' counterclaims are not barred by res judicata, and the motion to dismiss on this ground should be denied.

### Section 1983 and Due Process

LNV argues the counterclaims should be dismissed because they fail to state a claim under 42 U.S.C. §1983.  It is noted that LNV's "due process" claim is specifically asserted under 42 U.S.C. §1983, §1988, and the Louisiana Constitution.  Defendants' counterclaim for violation of due process is alleged to

13

have arisen out of the wrongful seizure and conversion of the corporeal movables. Defendants allege that they "were physically separated from, deprived of possession of, prevented from using, and never returned to possession of, the Corporeal Movables, as a result of the filing of the Louisiana executory proceeding, which was prosecuted by LNV with the help of the Clerk of Court, a Judge, and the Lafayette Parish Sheriff's office – all state actors."

To state a claim under §1983, a claimant must allege facts that show (1) he/she has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See American Manufacturers Mutual Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999), *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). "Under color of state law" excludes from its reach purely private conduct, no matter how discriminatory or wrongful. *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982). In general, neither litigants nor their counsel are "state actors" for purposes of stating a viable §1983 claim merely because they are utilizing the state's courts and/or its laws. *See*, *e.g*., *McDougald v. Jenson,* 786 F.2d 1465, 1488–89 (11th Cir.1986); *Kelm v. Hyatt,* 44 F.3d 415, 421–22 (6th Cir.1995); *Dahlberg v. Becker,* 748 F.2d 85, 90–93 (2nd Cir.1984); *Miller v. Compton,* 122 F.3d 1094, 1097–98 (8th Cir.1997).

14

Defendants argue that because LNV utilized the executory proceeding, and the state actors involved in that proceeding, to take the Corporeal Movables away from them and then delivered the Corporeal Movables to a subsequent purchaser of the foreclosed property, LNV has potential liability under §1983.  Defendants cite *Bank of New York Mellon*, 71 So.3d 1034, 1042 (La. App. 3rd Cir. 6/29/11), in support of their argument that a §1983 cause of action may exist in connection with a private litigant's use of executory process.  *Bank of New York Mellon* held that a private party who sets an attachment scheme in motion is considered a state actor if the plaintiff challenges the constitutionality of the procedure, and that a plaintiff who asserts that executory process was used in a manner that violated her due process rights, and argues that the "process" deprived her of her constitutional rights, potentially has a claim under §1983.

Careful review of the decision in *Bank of New York Mellon* shows that the facts of that case are distinguishable from the facts of the instant case.  In *Bank of New York Mellon*, there were several inadequacies in the foreclosure process, so much so that the mortgagee was required to convert its foreclosure by executory process to one by ordinary process.  In that case, the loan instruments were executed by the mortgagors in 1999; the original Note was "lost" at the time of the bank's petition in 2004; and the bank apparently did not find the original notary

15

and have the copies of the note and mortgage certified as true and correct. Notwithstanding, the bank asserted in its petition, and through its counsel, that all evidence attached *was* authentic. This was not true, but the lack of authentic evidence was apparently not noted by the state court judge who approved the seizure. In *Bank of New York Mellon*, the mortgagor obtained a judgment of injunction to stop the seizure by executory process because the bank's evidence was defective, even where the attorney for the bank had certified that the evidence was authentic.  The judgment of preliminary injunction also ordered the bank to convert its action to an ordinary proceeding and specifically preserved the mortgagor's actions for wrongful seizure under state law and for §1983 violations under federal law.  *See Bank of New York Mellon v. Smith*, 71 So. 3d 1034, 1043, *writ denied*, 75 So. 3d 462 (La. 11/18/11).   Thus, in *Bank of New York Mellon*, the court determined that the bank and its attorney had used the constitutional executory process in an allegedly unconstitutional manner, such that the plaintiff stated §1983 claims.

In the instant case, the undersigned concludes that the defendant's counterclaims against LNV do not allege facts sufficient to establish the deprivation of a constitutional right and/or that such occurred by a state actor. Specifically, the defendant's claims against LNV do not rise to the level of

16

constitutional violations such as the types of claims alleged by the mortgagor in *Bank of New York Mellon,* where the bank and its attorney caused a seizure by the sheriff and where there was a final judgment indicating that such seizure was unlawful and a judgment of injunction against the bank for lack of authentic evidence along with an order to convert its action to ordinary process. Based on these facts, the mortgagor in that case specifically asserted that the bank and its attorney, though warned not to do so, "proceeded to utilize a process that deprived" her of her constitutional right to a pre-seizure hearing, caused constructive seizure of her home by the Sheriff, and caused her to move her family out of the home. There is no constitutional challenge to the use of executory process in this case, and in fact, most of the counterclaims seek damages for the wrongful conversion of the movables located on the foreclosed property, an action that is alleged to have occurred after the judicial sale of the real estate.   In short, the defendants have not sufficiently pled facts demonstrating the plausible existence of claims under the Section 1983 standard, and for this reason, LNV's Section 1983 claims, including LNV's due process claim, should be dismissed.

**Wrongful Seizure and Conversion Claims**

Defendants' counterclaims for wrongful seizure and conversion address defendants' contention that LNV unlawfully acquired possession of the Corporeal

17

Movables and transferred or sold the real estate with the Corporeal Movables inside. LNV counters that there is no evidence that it took any action with respect to the Corporeal Movables, and that the claims for wrongful seizure and conversion should therefore be dismissed.

The counterclaim for wrongful seizure and conversion is alleged to have occurred as part of the foreclosure process, and it specifically alleges that LNV unlawfully acquired possession of the Corporeal Movables over which it had no security interest and either purposely sold the movables or failed to account for these movables when selling the real estate with the movables inside.   Defendants allege that, even if LNV had a security interest in the movables, LNV did not acquire the movables by judicial sale in accordance with the executory process article of the Code of Civil Procedure.

Louisiana appellate courts have considered conversion and wrongful seizure as complementary theories of recovery for the improper taking of another's movable property.  *In re Discount Cigarette,* 399 B.R. 605, 616 (U.S.B.C., M.D. La., 1/15/2009), citing *Dixie Savings & Loan Assoc. v. Pitre,* 751 So.2d 911 (La. App. 5th Cir. 1999) and *Echo, Inc. v. Power Equipment Distributors, Inc.,* 719 So.2d 79 (La. App. 1st Cir. 1998).   The *Discount* Court defined the "tort of conversion" as ". . . the unlawful interference with the ownership or possession of

a movable.  It requires: (1) acquisition of possession in an unauthorized manner; (2) removal of a chattel from one place to another with the intent to exercise control over it; (3) unauthorized transfer of possession of the chattel; (4) withholding possession from the owner; (5) alteration or destruction of the chattel; (6) improper use of the chattel; or (7) assertion of ownership over the chattel. *Id.* at 616.

Regarding the complementary wrongful seizure cause of action, the *Discount* Court opined:

> A creditor bypassing judicial process to recover possession of goods from a defaulting purchaser can only avoid liability for wrongful seizure by proving that the owner consented to the creditor's actions. A purchaser's default in payment does not justify repossession by the defendant's agent without resort to proper legal process unless the purchaser consents to the method of repossession. Accordingly, a party that may have superior rights to disputed property cannot employ extra-judicial remedies and plead the possessor's non-ownership as a defense to a claim based on the use of those remedies.

*Discount,* 399 B.R. at 616 (internal citations omitted).

Taking all facts as pled by the defendants as true, which this Court must do under the Rule 12(b)(6) standard, the undersigned finds the defendants state a claim for wrongful seizure and conversion, and these claims should not be dismissed at this time.

19

**Abuse of Rights**

LNV frames defendants' counterclaim for "abuse of rights" as one for "abuse of process," and argue the defendants fail to state a claim for abuse of process.  Defendants clarify that the claim they are asserting is one for abuse of rights.

"The abuse of rights doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights."  *Iberiabank v. Broussard*, 2015 WL 8785247, *7 (W.D. La. Dec. 15, 2015), *citing Truschinger v. Pak,* 513 So.2d 1151, 1154 (La. 1987).  "The principle is essentially that 'fault' in the delictual sense can be imposed upon a party who attempts to exercise a legal right with the primary intention of harming or imposing a detriment upon another."  *Iberiabank*, 2015 WL 8785247 at *7, *citing Insulation Technologies, Inc. v. Industrial Labor and Equipment Services, Inc.,* 122 So.3d 1146, 1151 (La. App. 4th Cir. 2013). The doctrine applies only when one of the following conditions is met: (1) the predominant motive for exercise of the right is to cause harm; (2) there is no legitimate motive for exercise of the right; (3) exercise of the right violates moral rules, good faith, or elementary fairness; or (4) exercise of the right is for a purpose other than that for which it was granted.  *Id.*

In this case, defendants allege that LNV "had no serious and legitimate interest in seizing or otherwise taking possession and control over the Corporeal Movables without complying with applicable Louisiana law." To support this allegation, defendants argue that the facts pled in ¶¶ 40-42, 49-57, 70-71 and 77 support their claim of abuse of rights. Nevertheless, defendants argue the movables were seized and sold as part of the foreclosure process, to their detriment. The defendants need not prove their claim for abuse of rights at this juncture, they must merely plausible state a claim for relief. Taking the defendants' allegations as true, which this Court must do under the Rule 12(b)(6) standard, the undersigned finds the defendants state a claim for abuse of rights, and this claim should not be dismissed at this time.

**Attorneys' Fees**

Under Louisiana law, attorney fees are only recoverable based on a contract or statutory provision allowing recovery of such fees. *Huddleston v. Bossier Bank & Trust Co*., 475 So.2d 1082, 1085 (La.1985) ("Attorney fees are not allowed except where authorized by statute or contract."). The defendants have provided this Court with no evidence that there is a statute or contract entitling them to attorneys' fees in connection with their counterclaims. Therefore, the claim for attorneys' fees should be denied at this time.

21

Considering the foregoing, IT IS RECOMMENDED that the Motion to Dismiss [Doc. 33] filed by plaintiff, LNV Corporation ("LNV") be GRANTED IN PART AND DENIED IN PART.  Specifically, the undersigned concludes that the defendants' counterclaims are not barred by the *Rooker-Feldman* doctrine, nor are they barred by res judicata.  No other argument has been made that this Court lacks subject matter jurisdiction over the counterclaims.   The undersigned RECOMMENDS that LNV's motion to dismiss the defendants' counterclaims arising under Section 1983, including LNV's due process claims, and all claims for attorneys' fees be GRANTED, but that the motion to dismiss the defendants' counterclaims for wrongful seizure, conversion, and abuse of rights be DENIED at this time.

Under the provisions of 28 U.S.C 636(b)(1)(C) and Fed.R.Civ.P 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within

22

fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 30th day of June, 2020.

**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

23